Mem. — Wells, J. being engaged in the trial of issues in the counties of Washington and Aroostook, took no part in the decisions in this county.

## PHILIP R. SOUTHWICK *versus* AMOS SMITH.

S. delivered to W. a quantity of hides, and received his note at their agreed value, payable in eight months. At the same time W. gave to S. a written agreement, if his note should not be paid at maturity, to return the leather made from the hides to S. to be sold by him, and the proceeds to be applied to the payment of the note, and the surplus, if any, paid to W. *Held* that the property in the hides passed to W. and that S. could not maintain replevin for them.

REPLEVIN for a quantity of hides. The action was referred, and the referee awarded that the plaintiff become nonsuit, unless upon the evidence before him the Court should be of opinion that the action could be maintained.

The plaintiff introduced a paper of which the following is a copy. "Boston, Nov. 27, 1844. Whereas I have this day received of P. R. Southwick, 200 dry Buenos Ayres hides, weight 4422 lbs. and given my note for the same at this date for six hundred and ten $\frac{62}{100}$ dollars, at eight months, now I hereby agree to return the leather, made from the above named hides, to the said Southwick to be sold, the proceeds of

which is to be applied to the payment of the above described note, and the balance to remain in his hands subject to my order; provided, nevertheless, if the above named note shall be paid by me at maturity, this agreement to be void, otherwise to remain in full force and effect.    Jos. E. Were."

The hides, described in this paper, were taken to Bucksport to be tanned, and were tanned, and soon after attached by defendant and another as the property of Were; the note described was unpaid, and Were had disposed of a few of these hides. It was proved that the leather replevied, was made from these hides.

Upon this report the court below, ALLEN, J., ruled and adjudged, that the plaintiff could not sustain his action and ordered a nonsuit, to which order and determination plaintiff excepted.

*Kent & Cutting*, for plaintiff, maintained, that from a common sense view of the receipt, no one could fail to see, that it was designed to secure the payment for the hides; if not so, why was any other paper taken but the note? According to defendant's construction, the receipt was a perfect nullity.

In the exposition of all agreements, the great object of the law is, to effectuate the intention of the parties. *Long on Sales*, chap. 3, 106; *Blood* v. *Palmer*, 11 Maine, 418.

This was not in the alternative, to return the leather *or* pay the note, and so bring it within our decisions in 16 Maine, 17, 17 Maine, 346, and 20 Maine, 318, nor could the parties so understand it, for if so, the paper would be a nullity.

Had the contract been to pay $610,62 in eight months, or return the leather, and that was all, any one could see the intention of the parties, and it would fall within the cases cited. But here was something more than an alternative. Plaintiff could enforce the payment of the note if Were was worth it; he wanted other security, viz. upon the hides which were delivered coupled with a condition, which run with his property. Not so in the cases cited from our Reports. There

the plaintiff had no power to enforce payment, but the option to pay or return the property was with the other party.

The design of Southwick was to get pay for his hides, and if his note was paid at maturity that design was accomplished and his contract void; if he did not get his pay, his contract was to be enforced. The note not being paid, the proviso executed its office, and became *functus*, the moment after the maturity of the note.

The note being unpaid at maturity, *Were* could not afterwards tender the amount, but Southwick could reclaim the leather; he had a right to it, an interest in its sale, for commissions and employment as a commission merchant, and could enforce his contract. *Blood* v. *Palmer*, 11 Maine, 418.

It was therefore a sale upon a contingency. If the note was not paid at maturity, the property was to revert to the original owner. The note was security on *Were;* the agreement was security on the property.

Again, it was a bailment and not a sale. Judge Story, in his work on Bailments, chap. 6, § 439, has put a case like in principle to this, and it is cited by the Court in *Buswell* v. *Bicknell*, 17 Maine, 346. The taking of the note can make no difference, for that was merely to obtain personal security, without reference to the things delivered. The agreement was a distinct affair, and had reference to security in the things, *in rem.* No legal mind can for a moment entertain an idea of the note altering the rights of the parties, as to the security on the property.

*W. Abbott*, for defendent, contended, that the plaintiff, alleging himself to be the owner, the burden of proof is upon him to establish that fact. He produces a paper, made by *Were*, as evidence of his title, which on the face of it shows the property in *Were*.

The preamble is an admission of the sale, and the plaintiff producing it cannot deny its assumptions.

There was a delivery of the hides to Were and payment for them by his note of hand payable in eight months. The paper says, I have received the hides and given my note for

the same. That is, I have given my note in payment for the hides.

Here was a sale, delivery and payment, and the sale was absolute.

Does the remainder of the paper affect the sale of the hides? We say it does not.

The preamble is merely introductory to the agreement. In the agreement, if it had been the intention of the parties to make the sale conditional, or to retain any security upon the hides, some appropriate terms would have been used for that purpose.

The agreement is entirely independent of the sale. If the parties intended any thing but the personal security of Were, they have used no language to effect their purpose.

If the sale was to be void unless the note was paid, or the leather sent to Boston, it would have been easy to have said so.

The agreement to send the leather to Boston was a mere personal affair, for which Were would have been liable to an action and nothing more. The leather if sent, was to be treated precisely as if the property of Were. The proceeds were to be appropriated to pay his debt, and the balance subject to his order.

But it is said this is a bailment. Surely nothing can be more unfounded in law. Suppose the hides had been lost on the voyage from Boston to Bucksport, or the leather tanned from them destroyed, would the loss have fallen upon Southwick? This point needs no argument.

As to the sale being on a contingency, we say, if not absolute, it was left in the power of Were to pay the note or to return the leather, and in that view the cases of 16 Maine, 17, 17 Maine, 344, 1 Fairfield, 31, and 20 Maine, cited by plaintiff's counsel, are full to our purpose.

The hides could not be considered a pledge, because the property remained in the hands of the pledger. Nor can it be considered a mortgage, as no record of the paper has been made.

SHEPLEY, J. — The hides replevied were formerly the property of the plaintiff. On November 27, 1844, he delivered them to Joseph E. Were, and received his note for their agreed value, payable in eight months. He received from Were at the same time a written contract, to return to him the leather made from them to be sold by him. The proceeds were to be applied to the payment of the note, and he was to account to Were for the balance. If he paid the note at maturity, Were was to be relieved from the performance of his contract, to return the leather.

There was no provision or stipulation, that Were should in any event be relieved from the payment of his note. He could not return the hides, or the leather made from them, and be entitled to receive it. If the hides or the leather had been lost on the passage from Boston to Bucksport, or from Bucksport to Boston, the entire loss would have fallen upon him. If he failed to pay his note, the leather was to be sold as his, and the proceeds were to be accounted for to him as coming from his property. If by reason of the hides being of an inferior quality, by negligence or misfortune in the process of tanning, or by a fall of price, the leather would not sell for an amount sufficient to pay the note, the plaintiff could have collected the balance of Were. By no election could Were have avoided the risks and liabilities of an owner, and he alone would under all circumstances have been entitled to all the benefits that might accrue to the owner. The agreement to return the leather, was to be avoided by a punctual payment of the note, but the completion of the sale, did not depend upon it. Both parties were absolutely, and not upon a contingency, entitled to all the profits and subjected to all the losses of a transfer of the title to the property.

The argument for the plaintiff, that it was "a sale, if the note was paid at maturity, if not paid at maturity the property was to revert to the original owner," is not consistent with the plaintiff's right secured by the contract, to sell the leather in such an event as the property of Were, and to subject him to any loss which might happen. Nor can Were, according to

the cases referred to in the argument, be considered as the bailee of the plaintiff. If the hides had been delivered without any other contract to be tanned, and the leather made from them to be returned, a similar case might have been presented. There can be here no foundation for an argument, that the leather was the joint property of the plaintiff and of Were, for the whole and not a part of the loss or gain was to be borne or received by Were. If, as insisted, it was the intention of the parties, that the title to the property should not pass from the plaintiff, that could only be ascertained by a judicial tribunal for the purpose of regulating its duty from their acts and written contracts; and if they did not so exhibit their intention, that it could be legally ascertained, the result must be the same.　　　　　　　　　　　*Exceptions overruled.*